Dan Lawton (State Bar No. 127342)
dan@lawtonlaw.com (Electronic mail)
Joseph C. Kracht (State Bar No. 228507)
joe@lawtonlaw.com (Electronic mail)
LAWTON LAW FIRM
Emerald Plaza
402 West Broadway, Suite 1330
San Diego, CA 92101
(619) 595-1370 (Telephone)
(619) 595-1520 (Telefacsimile)
www.lawtonlaw.com

Attorneys for Plaintiff Summa Consulting, LLC

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMMA CONSULTING, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CRYSTAL VISION ENTERPRISES, LLC, a California limited liability company d/b/a HAMILTON COLLEGE CONSULTING; BRIAN DEVINE, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. '16CV2851 H    BGS<br><br>COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIONS FOR INFRINGEMENT OF COPYRIGHT AND UNFAIR COMPETITION; DEMAND FOR TRIAL BY JURY AND FOR SPEEDY HEARING |

For its claims for relief against defendants pursuant to Fed. R. Civ. Proc. 8, plaintiff Summa Consulting, LLC (hereinafter "Summa"), alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the laws of the United States, including without limitation the Federal Copyright Act, 17 U.S.C. § 101 *et seq*., and 28 U.S.C. § 2201.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1338, and 1367. Summa brings this action in order to seek relief for, *inter alia*, defendants' infringement of its copyrighted works (identified in more detail below).

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1400.

## THE PARTIES

4. Plaintiff Summa Consulting, LLC is a California Limited Liability Company with its principal place of business, and doing business, in this District.

5. Defendant Crystal Vision Enterprises, LLC is a California Limited Liability Company, which is doing business as Hamilton College Consulting, a privately-held company which operates a tutoring and college entrance examination preparation business in this District. Sometimes hereinafter the terms "Crystal Vision" and "HCC" are used interchangeably to refer to defendant Crystal Vision Enterprises, LLC. Christopher J. Hamilton, debtor in a bankruptcy proceeding pending in the local U.S. Bankruptcy Court as of this writing, is Crystal Vision's chief executive officer and control person. Hamilton's mother, Diana Hamilton, owns 100% of the equity of Crystal Vision.

6. Defendant Brian Devine is a natural person and a resident of this District. He is a former Summa employee. He is an employee and agent of Crystal Vision.

7. Summa is unaware of the true names or capacities of DOE defendants 1 through 25, inclusive, and therefore sues such defendants by such fictitious names. Summa is informed and believes, and based thereon alleges, that each of the defendants designated herein as a DOE is in some manner responsible for, and contributed to, the injuries and damages hereinafter alleged. Summa will seek leave of this court to amend to assert the true names of these defendants when same has been ascertained. Wherever it is alleged that any act or omission was also done or committed by any specifically named defendant, or by defendants generally, plaintiff intend thereby to allege, and does allege, that the same act or omission was also done and committed by each and every defendant named as a Doe, and each named defendant, both separately and in concert or conspiracy with the named defendants.

8. At all times mentioned herein, defendants, and each of them, were the agents, servants, co-conspirators, or employees of one another, and the acts and omissions herein alleged were done or suffered by them, acting individually and through or by their alleged capacity, within the scope of their authority. Each of the defendants aided and abetted and rendered substantial assistance in the accomplishment of the acts complained of herein. In taking the actions, as particularized herein, to aid and abet and substantially assist in the commission of the misconduct complained of, each defendant acted with an awareness of his, her or its primary wrongdoing and realized that his, her or its conduct would substantially assist in the accomplishment of that misconduct and was aware of his, her or its overall contribution to, and furtherance of the conspiracy, common enterprise, and common course of conduct. Defendants' acts of aiding and abetting included, *inter alia*, all of the acts each defendant is alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

**STATEMENT OF FACTS**

9. Christopher Hamilton formerly worked for Elite of Los Angeles ("Elite") providing SAT tutoring services. In 2011, while still employed by Elite, he formulated a secret plan to leave Elite and form a competing entity. Afterward, he formed Summa Consulting, LLC to directly compete with Elite, and recruited key Elite employees to leave and join Summa. Until he sold the business in November 2013, as set forth below, Christopher Hamilton was the sole member of Summa. On or around November 18, 2011, Christopher Hamilton, his wife Elizabeth Hamilton, Summa, and certain former Elite employees who had joined Summa at Christopher's urging, were sued by Elite and its affiliate San Diego Testing Services for misappropriation of SAT preparation-related trade secrets (the "Trade Secret Action"). The case was tried to a jury verdict in April 2013, and Christopher Hamilton was found liable for breach of fiduciary duty, breach of the duty of loyalty, intentional interference with prospective economic advantage, and willful misappropriation of trade secrets. The jury returned a multimillion dollar verdict against Christopher Hamilton individually, and his wife Elizabeth Hamilton was found liable for aiding and abetting her husband's illegal conduct.

10. As of October 2013, Summa was facing a $1 million judgment against it arising from the Trade Secret Action. Summa intended to appeal the judgment against it, but required a $1.5 million appeal bond to perfect the appeal, stay the underlying case, and, thus stay plaintiffs' ability to collect on the judgment during the pendency of the appeal. In order to obtain an appeal bond for Summa, Ready Made Pictures, LLC, SVI Sorrento Valley Investments, LLC, and Diana Hamilton (collectively "the Appeal Bond Investors") each agreed to provide cash collateral on behalf of Summa in the amount of $500,000. Each of the Appeal Bond Investors made the same deal with Summa: provide cash

collateral for the appeal bond in exchange for (1) a $50,000 initial payment, and (2) $50,000 on each anniversary of their contribution if the appeal bond had not been exonerated (or a pro rata portion thereof if exonerated before the anniversary). None of the Appeal Bond Investors received equity in Summa in exchange for their provision of cash collateral for the bond, nor could they because, *inter alia*, 100% of Summa equity was accounted for by the Amended Operating Agreement, which was signed in November 2013.

11. Christopher Hamilton executed two written agreements with Summa: an Amended Operating Agreement, and an Executive Employment Agreement ("Employment Agreement"). Under the Amended Operating Agreement, in exchange for a substantial capital investment, SVI Sorrento Valley Investments, LLC and Ready Made Pictures, LLC (collectively, the "New Owners") obtained a majority equity interest (85%) and full operational, financial, and managerial control of Summa. Hamilton received a 13% equity stake, and remained a member of Summa. The New Owners agreed in writing to make capital contributions, separate and in addition to the Appeal Bond contributions, in exchange for equity ownership interests of 28.33% (SVI Sorrento Valley Investments, LLC) and 56.66% (Ready Made Pictures, LLC) in Summa.

12. Christopher Hamilton represented to the New Owners that no other person or entity had an equity interest in Summa. In the event that Christopher Hamilton secretly made a promise of equity to his parents, whether prior to the execution of the Amended Operating Agreement, or after, Summa and the New Owners are entitled to equitable indemnity from Christopher Hamilton for any harm suffered by them as a result of the secret deal.

13. The members of Summa owed fiduciary duties to Summa, including the duties of loyalty, reasonable care, and confidentiality. Moreover, the

1  Amended Operating Agreement provides, at Paragraph 5.4, that no member may
2  engage in business activities that are "in direct competition with the Company,
3  which for the purposes of this Agreement, will mean providing tutoring or other
4  supplemental education services related to standardized test preparation, college
5  counseling or assistance with college applications." Similarly, Section 5.4.2
6  provides that a member is obligated to present any "investment opportunity or
7  prospective economic advantage to [Summa], if the opportunity or prospective
8  economic advantage is of the character that, if presented to [Summa], it could be
9  taken by [Summa]."

14. Christopher Hamilton and Summa also entered into a written Employment Agreement subsequent to the New Owners having acquired their controlling interest in Summa. The Employment Agreement prohibits Christopher Hamilton's disclosure or use of any of Summa's Confidential Information, and requires him to return to Summa, upon his termination, all such Confidential Information. "Confidential Information" is specifically defined by the Employment Agreement to include information concerning Summa's "customers and clients and customer or client lists." The Employment Agreement further prohibits Christopher Hamilton's use of that Confidential Information and trade secrets to induce any customer to cease doing business with the Company, or to compete with the Company within a reasonable and necessary scope and duration.

15. In order to induce the New Owners to invest in Summa, Christopher Hamilton fraudulently concealed and misrepresented material facts. As a result of these and many other wrongful acts, on February 28, 2014, Summa terminated Christopher Hamilton's employment with Summa.

16. Summa's practice exams and teaching include copyrighted works (sometimes referred to hereinbelow as the Copyrighted Work). The U.S. Register

of Copyrights and Director has duly issued certificates of registration for the Copyrighted Work. These certificates bear these registration numbers: TX 8-217-484 (Summa Education SAT Practice Test Form Code SNA01), Summa Education SAT Practice Test Form Code SNA02), and TX0008221969 (Summa Education SAT Mathematics Lesson 12), among others.

17. Upon his termination, Summa requested the return of Christopher Hamilton's laptop in order to delete Summa's Copyrighted Work and confidential and protected trade secrets, including customer lists, course materials and lesson plans from it. At the time of his termination, Summa also locked its computer systems, including e-mail, to prevent Christopher Hamilton from accessing Summa's Copyrighted Work, trade secrets and confidential information. Christopher Hamilton refused to return the laptop or any of the data it contained.

18. Undeterred by the jury verdict against him in the Trade Secret Action, in June 2014, Christopher Hamilton announced via Facebook, which he uses as his publicity machine, that he would teach SAT classes this summer in his new business – Hamilton College Consulting, a d/b/a of Crystal Vision Enterprises, LLC. John and Diana Hamilton have themselves posted notes of support on Christopher Hamilton's Facebook page. Christopher Hamilton's SAT courses began on June 16, 2014 and he continues to operate the business today – directly competing with Summa – while still in possession of Summa's Confidential Information.

19. On information and belief, Diana Hamilton, Crystal Vision Enterprises, LLC d/b/a Hamilton College Consulting and DOES 1 through 25 are knowingly interfering with Summa's business as Christopher Hamilton has openly and brazenly taught SAT courses since the summer of 2014 in direct contravention of his obligations to Summa.

20. Christopher Hamilton's termination led to the filing of litigation

between Christopher Hamilton and Summa in April and May 2014. In an attempt to shield himself from offensive claims, Christopher Hamilton also filed for Chapter 11 bankruptcy in late April 2014. The filing of the bankruptcy imposed an automatic stay, pursuant to 11 U.S.C. § 362, prohibiting Summa (a creditor) from pursuing claims against him in this Court. Summa has filed affirmative claims against Christopher Hamilton for the actions alleged herein, including breach of contract, breach of fiduciary duty, trade secret misappropriation, interference with prospective economic advantage, and interference with contractual relations, in an adversary proceeding pending in the Southern District of California Bankruptcy Court.

21. Recent investigation has revealed the following facts. Brian Devine was a Summa employee from January 11, 2013 to March 10, 2015. During that time, Devine tutored and taught approximately 200 students. Upon his contract of hire with Summa, Devine signed a Confidentiality Agreement in which he agreed to "protect its Confidential Information and its rights in Developments and all related intellectual property rights." During his employment with Summa, Devine, on behalf of Summa, utilized teaching methodologies, curriculum, and other materials developed by Summa that are Copyrighted Work and the proprietary intellectual property of Summa.

22. Devine stole and copied Summa Copyrighted Work and proprietary information, solicited Summa customers, continued to solicit Summa employees, encouraged others to steal Summa proprietary information, encouraged others to steal money from Mr. Garrett, and defamed Summa and Mr. Garrett.

23. Perhaps worse, his decision to perform all of these bad acts was enabled by hacking into his old email at Summa and utilizing the Summa Gmail account to access, copy, distribute, and exploit Summa's Copyrighted Work and other proprietary Summa intellectual property. Between March 10, 2016 and

June 28, 2016, Devine accessed seventeen files. Of those, eleven were student files; five were curriculum materials; and one was a student list. Each was an asset of Summa.

24. Starting on March 7, three days before he sent his official resignation email, Brian Devine sent out an automatic rely email in which he stated: "Brian no longer works out of Summa Education, and Summa Education no longer exists."

25. On March 8 and March 9, Devine set up and distributed and an auto-reply email in his Summa domain. It said: "Brian no longer works for Summa Education because Summa Education no longer exists. The owner, was NOT education oriented and are only motivated by profit, have pulled the plug, filed bankruptcy, have NOT paid their teachers for the last mon[th], and will NOT provide refunds nor fulfill commitments to the many hundreds of folks that had paid for or deposited monies for tutoring and enrollment in future classes." These statements were false and defamatory. Devine then attached Matt Garrett's information, phone number, and address in the generated email. Devine caused this email to be sent eleven times and before he sent his letter of resignation to Mr. Garrett.

26. On May 5, 2016 Devine updated his Summa auto-reply email to direct it to his new email address, brian@hamiltoncollegeconsulting.com. There are screenshots of Devine accessing and using documents from the Summa Gmail drive. All of these documents were trade secrets misappropriated by Devine acting at the direction of the other defendants. Additionally, on March 31, 2016, Devine (35 days before he officially changed his email address to brian@hamiltoncollegeconsulting.com) distributed proprietary curriculum material to Drake Caraker, also a former Summa employee now employed by Hamilton College Consulting inviting him to "collaborate" and "contribute" to

the shared Summa folder called "Math Images."

27. Again on April 28, 2016, Devine invited two Hamilton College Consulting employees to contribute to the "Math Images" folder: Drake Caraker, who is the Math Curriculum Developer for Hamilton College Consulting, and Shelby Condray, who is the Marketing and Curriculum Manager and Graphic Designer.

28. On at least five occasions, between March 10, 2016 and June 2, 2016, Devine accessed several math curriculum materials including "Algebra 1 Modules" and "6 and 7 Homework Modules." All of these materials were Summa's trade secrets illicitly accessed and stolen by Devine with the knowledge and approval of the other defendants. It is obvious that before Brian Devine officially changed his email to that of the Hamilton College Consulting domain, he was actively participating in the theft of Summa's curriculum, student files, and solicitation of former Summa teachers. Devine was not acting on his own.

29. Considering the judgment Elite Educational Institute won against Hamilton dated August 13, 2013 for breach of fiduciary duty, breach of duty of loyalty, intentional interference, and misappropriation of trade secrets, these intentional actions illustrate a pattern of malicious and (in some cases) illegal behavior perpetrated by defendants.

30. It is clear from the evidence gathered that Hamilton and HCC employees have stolen and copied Summa Copyrighted and used without even taking the smallest precaution to change formatting, words, or the ordering of the question numbers.

31. In January and February of 2016, Summa created two full tests for their students. Today, HCC has the identical two full tests. Within each test Summa created, there are 5 total sections. 2 of these sections are math sections. The remaining 3 sections are reading, writing, and a practice essay. Today, HCC

has the identical format. When comparing Summa's SNA01 and HCC's 001 tests, Summa found the following information: Both first math sections had a combined total of 58 math questions (20 questions to answer without a calculator and 38 to answer with a calculator). Of those 58 questions, 21 questions were identical, and 37 questions had minimal word changes (*e.g.*, a farmer sold *persimmons* instead of *cherries* or they changed the name *Jeremey* to *Jackson*.) When comparing Summa's SNA02 and HCC's 002 (the second math test) Summa found the following. Both tests had a combined total of 58 math questions, (20 questions to answer without a calculator and 38 to answer with a calculator). Of those 58 questions, 23 were identical, and 35 had minimal word changes (*e.g.*, *Logan* was changed to *Hogan).*

32. Often times, when there were changes, Hamilton's name or the name Hamilton College Consulting was added in the problem. While Hamilton and HCC may have changed some of the wording on some of the questions, the vast majority are identical problems and many have identical wording. Either way, Hamilton and HCC stole every single question from both of these exams. This is notwithstanding the fact that Summa at all material times has clearly identified the practice exams as copyrighted material registered with the United States Copyright Office.

33. On July 13, 2016, Vahid Fozi, a former Summa employee employed by Hamilton College Consulting, sent an email to Matt Garrett advising him that HCC was using stolen math and science materials from Summa. Mr. Fozi recognized that HCC was using math and science material that he had written while under employment at Summa. According to Mr. Fozi, he turned in his resignation to Hamilton College Consulting on July 9, 2016, the same day he realized HCC was using stolen copyrighted material from Summa. Mr. Fozi provided Matt Garrett with photographic evidence of HCC's tests and the original

1 | Summa tests. Finally, there are two additional tests Mr. Fozi recognized as
2 | Summa's; Hamilton College Consulting H3 Summer 2016 MT04 and Hamilton
3 | College Consulting H3 Summer 2016 SC01.

34. It is obvious is that Hamilton and HCC stole and copied Summa's Copyrighted Work, they are using this curriculum, and they are profiting from Summa's copyrighted curriculum. So far Summa has evidence of four (4) different tests that HCC stole from Summa, and Summa is confident with further investigation and discovery it will uncover more theft.

## **FIRST CLAIM FOR RELIEF**

(Direct Copyright Infringement)

(Against All Defendants)

35. Summa realleges and incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

36. Under the U.S. Copyright Act, Summa has exclusive rights, *inter alia*, to reproduce the Copyrighted Work, to prepare derivative works based on the Copyrighted Work, and to distribute copies of the Copyrighted Work to the public. See 17 U.S.C. §§ 106(1), (2), (3).

37. Through their conduct averred hereinabove, defendants have directly infringed Summa's copyrights by reproducing, adapting, and/or distributing the film (which embodies the Copyrighted Work) without authorization in violation of the Copyright Act. See 17 U.S.C. §§ 106, 501.

38. Summa did not authorize defendants' copying, display or distribution of infringing copies of the Copyrighted Work.

39. Defendants knew that the practice exams infringed Summa's copyright and that they lacked permission to exploit the Copyrighted Work.

40. Defendants knew that their acts comprised copyright infringement.

41. Defendants' infringements were knowing, willful, negligent, in

1 | disregard of and with indifference to the rights of Summa.

2 | 42. Defendants stand to reap a direct pecuniary benefit from their infringements.

3 | 43. The aforementioned infringements occurred in whole or in part within the territorial boundaries of the United States and/or its territories.

4 | 44. Each copying and use of the Copyrighted Work constitutes a distinct, actionable, and separately compensable act of infringement.

5 | 45. As a result of their wrongful conduct, defendants are liable to Summa for copyright infringement pursuant to 17 U.S.C. § 501. Summa has suffered, and will continue to suffer, substantial damages. Summa is entitled to recover damages, which include his losses and any and all profits defendants have collected as a result of their wrongful conduct. In the alternative, Summa is entitled to statutory damages under § 504(a) and (c).

6 | 46. As a direct and proximate result of defendants' infringements, Summa has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which no adequate remedy at law exists. Unless enjoined by this Court, defendants will continue to infringe Summa's copyright.

## SECOND CLAIM FOR RELIEF

(Direct Copyright Infringement – Distribution)

(Against All Defendants)

47. Summa realleges and incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

48. Defendants, without Summa's consent or permission, are distributing Summa's Copyrighted Work and derivative works based on the Copyrighted Work to the public by making available to students the practice exams. Defendants' conduct comprises direct infringement of Summa's exclusive rights under the Copyright Act to distribute its Copyrighted Work to the public. 17

1 U.S.C. § 106(3).

49. Defendants' infringements have been willful, intentional, and purposeful, in disregard of and indifferent to Summa's rights.

50. Defendants have continued to infringe the Copyrighted Work.

51. As a direct and proximate result of defendants' infringements, Summa is entitled to actual damages plus defendants' profits from infringement pursuant to 17 U.S.C. § 504. In the alternative, Summa is entitled to statutory damages under § 504(a) and (c).

52. Summa is entitled to costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

53. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Summa great and irreparable injury that cannot fully be compensated or measured in money. Summa lacks an adequate remedy at law. Pursuant to 17 U.S.C. § 502, Summa is entitled to a permanent injunction requiring defendants to employ reasonable methods to prevent infringement of the Copyrighted Work.

54. As described above, defendants took and used certain confidential information from Summa, including, but not limited to, Summa's curriculum development tools, student data, customer contact information, employee contact and personal information, and teaching material and lesson plans. This confidential information is protected as trade secrets under the California Uniform Trade Secrets Act ("UTSA"), California Civil Code section 3426 *et seq*.

55. These trade secrets are of substantial value to Summa and it has taken reasonable measures to maintain the secrecy of these trade secrets.

56. Such trade secrets derive independent economic value from not being generally known to, or readily ascertainable by proper means, by other persons or entities who could obtain economic value from their disclosure or use.

1 These trade secrets are not known to others and are not in the public domain.

57. Defendants used Summa's trade secrets on behalf of themselves and/or Hamilton College Consulting, and disclosed these trade secrets to others, including Hamilton College Consulting, without the consent of Summa.

58. As a direct and proximate result of defendants' conduct, Summa has suffered, and will continue to suffer, damages in an amount to be determined at trial.

59. Defendants have used and will use these trade secrets to compete unfairly with Summa, and/or be unjustly enriched, unless restrained by this Court.

60. As a direct and proximate result of defendants' violations of the UTSA, Summa has suffered and will continue to suffer irreparable injury and loss.

61. In misappropriating Summa's trade secrets, defendants willfully and wantonly disregarded Summa's rights, entitling Summa to an award of exemplary damages.

62. Defendants' misappropriation of Summa's trade secrets was willful and/or malicious, entitling Summa to an award of its reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF

(Unfair Competition Under California's UCL)

(Against All Defendants)

63. Summa realleges and incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

64. Defendants' business practices as alleged hereinabove comprise unfair competition and unfair business practices and business acts in violation of California's unfair competition law, California Business & Professions Code §17200 *et seq*.

65. Without injunctive relief, Summa has no means by which to control

defendants' unlawful copying and distribution of his Copyrighted Work. Pursuant to California Business & Professions Code § 17203, the Court should enjoin these practices, including, *inter alia*, any further broadcast or display of the practice exams except on Summa's permission.

## **FOURTH CLAIM FOR RELIEF**

(Unfair Competition Under Common Law of California)

(Against All Defendants)

66. Summa realleges and incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

67. Defendants' business practices as alleged hereinabove comprise unfair competition and unfair business practices under the common law of the State of California.

68. As a direct and proximate result of defendants' business practices, Summa has suffered and will continue to suffer lost profits in an amount not yet fully ascertained, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Summa prays for relief as follows:

A. Until this case is decided, defendants and their agents be enjoined preliminarily and permanently from the manufacture, publication, display, distribution, advertising, sale, promotion, or airing of the practice exams and any other work which infringes Summa's copyright in the Copyrighted Work;

B. That defendants account for an pay as damages to Summa all profits and advantages gained from unfair trade practices and unfair competition in airing the practice exams and all profits and advantages gained from infringing Summa's copyrights (but no less than the statutory minimum);

1  C. That defendants deliver for impoundment all copies of the practice exams and the Copyrighted Work in their possession or control and deliver for destruction all infringing copies and all materials for making infringing copies;

D. That the Court declare defendants to have willfully infringed Summa's copyright in the Copyrighted Work;

E. That the Court order defendants to disgorge and account to Summa for any and all profits derived by defendants from the manufacture, production, publication, distribution, advertisement, airing, and/or any other exploitation of the Copyrighted Work;

F. That the Court assess against defendants pre-judgment and post-judgment interest, reasonable attorney's fees, and costs of suit against defendants, and that the Court award such interest, fees and costs to Summa;

G. That the Court award Summa a permanent injunction against further broadcast, airing or display of the practice exams as a result of its statutory and common law unfair competition;

H. For an award of actual damages suffered as a result of defendants' common law unfair competition;

I. For an accounting from each defendant of all monies generated from the broadcast, airing, and/or display of the practice exams, so that the Court may determine properly the full extent of Summa's damages;

J. For declaratory relief decreeing the parties' rights and liabilities vis-a-vis the practice exams and the LLC;

M. For an award of exemplary damages in an amount sufficient to punish defendants and deter others from similar misconduct in the future; and

P. For such other and further relief as this Court may deem just and proper.

| | | |
|---|---|---|
| 1 | DATED: November 21, 2016 | LAWTON LAW FIRM |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | By: <u>s/Dan Lawton</u> |
| 6 | | Dan Lawton |
| 7 | | Attorneys for Plaintiff Summa Consulting, LLC |

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Summa Consulting, LLC hereby demands a trial by jury as to all issues triable by jury.

DATED: November 21, 2016          LAWTON LAW FIRM


By: s/Dan Lawton
    Dan Lawton
    Attorneys for Plaintiff Summa
    Consulting, LLC